302 So.2d 551

**Ex parte Gordon McDaniel COLLINS.**

**5 Div. 249.**

Court of Criminal Appeals of Alabama.

July 30, 1974.

Rehearing Denied Oct. 1, 1974.

Samford, Torbert, Denson & Horsley, Opelika, for petitioner.

William J. Baxley, Atty. Gen., for the State, respondent.

DeCARLO, Judge.

This is an original petition for mandamus against one of the judges of the Thirty-Seventh Judicial Circuit of Alabama, praying that a Writ of Mandamus be issued directing the said respondent to vacate and set aside his order of February 20, 1974, denying petitioner's motion to dismiss.

On November 12, 1968, petitioner, who was under a Federal bond for cases pending in Arizona, was indicted on five separate criminal offenses in Lee County, Alabama. At his arraignment the following day, he was represented by employed counsel, Roberts H. Brown, and pled not guilty and not guilty by reason of insanity. When the cases were called for trial on December 4, 1968, petitioner failed to appear. His attorney stated that petitioner was a fugitive, and the court entered a conditional forfeiture of petitioner's bail bond.

These cases were called for trial at three separate terms of court—December, 1968, May, 1969, and December, 1969. Upon motion of the District Attorney on December 4, 1969, during the last term, the indictments were withdrawn and filed.

Petitioner also failed to appear when his federal cases were set on November 22, 1968, in the Arizona District Court, and a bench warrant was issued. On December 12, 1968, petitioner was returned to the custody of the Federal officials and sentenced under the Federal Youth Correction Act on December 19, 1968. He served time from that date until November 27, 1970, when he was paroled to Opelika, Lee County, Alabama. From the date of his parole until spring of 1972, petitioner lived in different areas of Lee County.

The Grand Jury of Lee County brought two additional indictments against petitioner on May 9, 1972, charging him with possession of marijuana and possession of marijuana paraphernalia. On April 21, 1972, prior to the indictments, John V. Denson was appointed to represent petitioner in these cases.

On May 16, 1972, during petitioner's arraignment on the new charges, the five old cases were reinstated by motion of the state, and due to the death of Roberts H. Brown, John Denson was appointed to represent petitioner. Reinstatement of these cases was opposed by Mr. Denson, and he based his objection on these grounds:

(1) That petitioner would be denied his right to a speedy trial on a charge brought by indictment some four years before.

(2) Petitioner would be hindered in the defense of his cases because certain witnesses were no longer available or could not be reached. The court overruled petitioner's objection, and the District Attorney's motion to reinstate the cases was granted.

All seven cases were set for trial on June 12, 1972, but petitioner failed to appear. He was a fugitive from this time until December 8, 1973, when he voluntarily returned to the Lee County Jail.

On February 1, 1974, counsel for petitioner filed a motion to dismiss the five old cases on the ground that petitioner had not been afforded a speedy trial. This motion was heard and oral evidence taken on February sixth and seventh. All the cases were set for trial on February 13, 1974, but were continued pending the court's ruling on the motion. On February 20, 1974, the motion to dismiss was overruled and denied, and on February 22, 1974, prosecution of the five old cases was continued until the judge's order of the twentieth could be reviewed through a writ of mandamus. The other two cases were continued until the next session of court.

### I.

After oral argument, the question of whether the writ should issue was submitted on a transcript of the hearing on the motion to dismiss and petitioner's brief.

 At the outset, the Attorney General moved to dismiss the petition on the ground that the petitioner has complete and adequate remedy through appeal, and in support of his contention, urges that the holding in Ex parte Pickett, 46 Ala.App. 227, 239 So.2d 900 (1970) should govern.

In *Pickett*, supra, this court had for review an original petition of mandamus against one of the judges of the Tenth Judicial Circuit praying for the issuance of an order requiring the respondent judge to vacate his order denying a pre-trial motion to suppress.

Judge Cates held the order was reviewable on final appeal if the defendant was convicted on the evidence sought to be suppressed, and the transcript of the pre-trial hearing could be brought up as a part of the record on appeal.

There is a distinction in the *Pickett* case and petitioner's case. Here, all the evidence pertaining to the issue of the writ is before this court. Nothing is shown to indicate the likelihood of any additional evidence being offered by the state to alter the factual situation. In *Pickett*, supra, there existed the possibility of a conviction on evidence other than that sought to be suppressed. This difference was noted by our court in Ex parte Parker, 48 Ala.App. 239, 263 So.2d 695, wherein an original writ of mandamus was sought to review an order denying a pre-trial motion to suppress.

Although the application was denied, Judge Cates observed:

"On oral argument it was pressed upon us that if we were to find that the circuit court should have suppressed the evidence then since the State had no other or additional proof to make out the case charged, the entire cause would be at an end.

"In Ex parte Pickett, 46 Ala.App. 227, 239 So.2d 900, no such claim was made. An examination of the Pickett record reveals that, except for the possibility that the magistrate who issued a search warrant took some of his proof from a policeman in a telephonic conversation, the proof to justify the search and seizure was prima facie adequate."

The Attorney General's motion, therefore, is not well taken.

### II.

Petitioner contends that approximately three and one-half years elapsed from the time of his indictment until he became a fugitive. He further alleges that approxi-

mately two years and five months elapsed from the time the indictments were filed away until they were reinstated, and that during this time, the state failed to take any action to prosecute even though petitioner was available at all times either in the federal penitentiary or in Lee County on parole.

Our examination of the record reveals this contention to be supported by the facts, and specifically from this testimony of Federal Parole Officer Young:

"Q: All right, sir. Now, let me ask you this: Do you know how much time he served on this Federal offense or Federal offenses, the total amount of time?

"THE COURT: Where is El Reno?

"THE WITNESS: Oklahoma. He served from December the 19th, 1968, until November the 27th, 1970, when he was paroled to Opelika, Lee County, Alabama.

"THE COURT: November the 27th, 1970?

"THE WITNESS: Yes, sir."

\*　　\*　　\*　　\*　　\*　　\*

"Q: And he was placed on parole on November the 27th, 1970, and then did he come under your supervision as parole officer?

"A: Yes, sir.

"Q: Do you know what areas he was restricted to, or he was to stay in, during that period of time?

"A: Yes, sir, the Middle District of Alabama, which is comprised of twenty-three counties.

"Q: Does that include Opelika, Lee County, Alabama?

"A: Yes, sir.

"Q: Now, did you have contacts with him during that period of time?

"A: Yes, sir.

"Q: And to your knowledge, was he present at all times in the Middle District of Alabama, from November the 27th, 1970, until the spring of 1972?

"A: Yes, sir."

\*　　\*　　\*　　\*　　\*　　\*

"Q: Do you know of your own personal knowledge whether or not any law enforcement officer or agent in Lee County was aware of the presence of Gordon McDaniel Collins prior to the new charges being brought against him in April of 1972?

"A: Yes, sir.

"Q: And who were these people that were aware of his presence?

"A: Well, certainly Frank de-Graffenried and all of the Auburn Police Department.

"Q: How do you know that?

"A: Well, I have a memorandum of it. I have talked with others but on July 23, 1971, I talked with Detective deGraffenried.

\*　　\*　　\*　　\*　　\*　　\*

"Q: Mr. Young, I have one other question. Between November of 1970, when Gordon McDaniel Collins was paroled to Lee County or to the Lee County Area, and in April or May of 1972, when he left approximately, how many conversations did you have with law enforcement officials in Lee County informing them of the presence of Gordon McDaniel Collins in Lee County, Alabama, in your best judgment?

"A: Well, it would just be a guess— about 20 to 25."

\*　　\*　　\*　　\*　　\*　　\*

"A: Well, the earliest point that I can definitely say from my records that I had any contact with the police was on 3–26–71.

"Q: 3–26–71 was the earliest contact that you have documented?

"A: Yes, sir.

"Q: And who was that with?

"A: With the Chief of Police, Fred Hammock, in Auburn.

"Q: And did you discuss or inform him of the presence of Gordon McDaniel Collins in Lee County or in the Lee County area at that time?

"A: Yes, sir."

Respondent argues that petitioner has not been tried on any of the seven pending cases because petitioner has not been available for trial. He further asserts that the first actual motion to dismiss was not filed until February 1, 1974, and that petitioner's counsel merely objected to the reinstatement of the indictments on May 16, 1972.

It is our judgment that the petitioner's objection to the reinstatement of the indictments was well taken. The position taken by the court below in granting the state's motion was erroneous and prejudicial to the petitioner's rights. The delay caused by the state's inactivity resulted in the unavailability of two defense witnesses, and deprived petitioner of his Constitutional right to a speedy trial.

We did not hear during oral argument or see in our search of the record anything to imply that the state made an effort to prosecute this petitioner on the old indictments. In fact, it does not appear that the state made an inquiry as to his whereabouts.

On authority of Klopfer v. State of North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1; Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607; Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 we hold that petitioner's Constitutional right to a speedy trial was violated.

The Petition for Writ of Mandamus be and the same is hereby Granted.

Peremptory writ awarded.

All the Judges concur.