310 So.2d 265

**Wilbert BROADNAX, alias**

v.

**STATE.**

**6 Div. 810.**

Court of Criminal Appeals of Alabama.

March 18, 1975.

Chris S. Christ, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and David L. Weathers, Asst. Atty. Gen., Birmingham, for appellee, the State.

BOOKOUT, Judge.

Robbery; 17 years.

Appellant was indicted March 9, 1973, by the Grand Jury of Jefferson County, on a charge of robbery. Due to a defect in the indictment, he was reindicted on the same charge on May 10, 1974. After being duly arraigned on the second indictment and entering a plea of not guilty, appellant went to trial on August 19, 1974, and the next day a jury returned a verdict of guilty and fixed the punishment at seventeen years in prison.

Appellant was found to be indigent and was represented by court appointed counsel during his arraignment and trial and on appeal.

Virgil Gray testified for the State that on January 5, 1973, at approximately 6:00 P.M., he was present at the Dixie Barbecue in Jefferson County, Alabama, when the appellant and another man entered that establishment. He testified that the two men inquired as to the location of the restroom, went down a hallway, and a short time later came out again into the restaurant brandishing pistols and shouting, "This is a stick up. Everybody get your hands up." The appellant had a nickel plated gun and the other man had a blue steel gun.

The witness said the robbers emptied the cash register and then forced a waitress to go among the customers and have them put all of their valuables into a paper sack. The witness stated he was forced to relinquish his wallet containing some $54.00. The various customers in the restaurant were then forced to lay face down on the floor as the two men escaped. During the course of the robbery, one of the customers was beaten with a pistol by one of the two robbers. They then fired several shots into the ceiling or walls of the restaurant and made their escape.

The witness made a definite identification of the appellant in the courtroom. He stated that he had picked appellant out from a group of photographs the police had given him and had seen the appellant face to face during the preliminary hearing in the Jefferson County Courthouse.

Curtis D. Belcher, Jr., was next called as a witness by the State. He testified that on January 5, 1973, he was the owner of the Dixie Barbecue and was present on the occasion of the robbery. He testified to essentially the same facts as the previous witness and, likewise, made a positive identification of the appellant in the courtroom. Although he stated he got a good look at the appellant's face and his pistol for a full ten minutes, he did not recall many details about the clothing of the appellant. The witness testified that he had about $400.00 taken from his cash register and from his person during the robbery and that his wife's purse was taken from the kitchen which contained a .38 pistol and about $75.00 in change.

The appellant called his mother, his brother and his sister as witnesses. Each

testified that the appellant was at home during the time of the robbery. All three witnesses, likewise, gave a different description of the appellant's clothing from that described by the two witnesses for the State.

The Defense called Police Officer William S. Jones as a witness. He testified from an investigation report of the robbery. The witness testified as to the description of the robbers set out in that report which was purportedly given by the two witnesses for the State to police officers, however, upon objection by the State, it was shown that the descriptions in the investigative report were not personally given to Officer Jones.

## I

There was no motion to exclude the State's evidence, no objections to the District Attorney's argument, no written requested charges on behalf of the defendant, no exception to the court's oral charge and no motion for a new trial.

Since the weight and sufficiency of the evidence is not presented here for review, the appellant seeks a reversal on the ground that he was denied the right to a speedy trial, and further contends that since the seventeen-year sentence was to run consecutively with a sentence he was already serving, he should be credited on his second sentence with the fourteen months between his indictment and trial in the instant case.

There is no indication in the record that the appellant ever asserted his right to a speedy trial at any time prior to or during the proceedings in the trial court below. The question of appellant's right to a speedy trial has been raised for the first time here on appeal.

It has been the settled rule in this state that a demand for a trial or objection to the postponement of the trial, or some other effort to secure a speedy trial on the part of the accused must be affirmatively shown in the record in order to entitle him to a discharge on the ground of delay. Hodges v. State, 48 Ala.App. 217, 263 So.2d 518, and cases cited therein. The approach taken by this state and many others is referred to as the "demand-waiver doctrine" by Justice Powell, speaking for the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L. Ed.2d 101. Barker v. Wingo sets forth new standards to be applied by courts in determining whether the constitutional right of a speedy trial has been denied, thereby overturning or drastically modifying the demand-waiver doctrine. This Court recognized the test set forth in Barker v. Wingo in the case of Giles v. State, 52 Ala.App. 106, 289 So.2d 673. Failure of a defendant to assert his right to a speedy trial is now only one factor to be considered, among four set out by the United States Supreme Court.

Barker v. Wingo, supra, states in part:

" . . . A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process.

. . .

" . . . This does not mean, however, that the defendant has no responsibility to assert his right. . . .

" . . . But the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. . . .

" . . . The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.

"A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which

courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

"The length of the delay is to some extent a triggering mechanism. . . . To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

"Closely related to length of delay is the reason the government assigns to justify the delay. . . .

" . . . We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

"A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. . . . "

However, in Barker v. Wingo, the United States Supreme Court, after applying the four factors therein enumerated, held that the length of delay between trial and arrest of well over five years did not deprive Barker of his due process right to a speedy trial. The Court found that between October 21, 1958, and February 12, 1962, no action was taken by the appellant which could be construed as the assertion of the right to a speedy trial. That Court found that Barker was waiting on the outcome of a case against an accomplice before making demand for a speedy trial. The Court held that Barker was gambling on the acquittal of his accomplice, and it was not until March, 1963, after conviction of the accomplice that Barker began to object to further continuances.

This Court must, therefore, apply the factors set forth in Barker v. Wingo, supra, to the facts in the instant case. In doing so, we find this case to be an ordinary street crime. The fact that it could be easily proved by the State is obvious by the simple testimony of the State's only two witnesses which established that the crime was committed, identified the appellant, and established venue. The State gave no reason for the delay. The record shows the appellant was being held or tried on several charges or counts and that the original indictment in this case was faulty. The faulty indictment was easily cured by simply reindicting the appellant, which was done in this case. Whether the other charges against the appellant are proper reasons for the delay in this case is not apparent from the record.

However, in assessing the length of the delay, the fact that the appellant never raised the question of a speedy trial until reaching this Court, and any prejudice the delay may have caused the appellant, we are unable to hold that there was a denial of a right to a speedy trial in this case.

Where the appellant was first indicted on March 9, 1973, and appointed counsel six days later, and was at all times represented by that counsel; and where the appellant was reindicted on May 14, 1974, and was tried on August 19–20, 1974; and where the appellant at no time prior to appeal raised the question of a speedy trial; and where no showing of prejudice to the defendant due to the delay was shown either to the trial court or to this Court from the record, we hold that this appellant was not denied the right to a speedy trial.

II

Appellant's second argument is that he is entitled to be credited on his sentence with the time between arrest and trial. In support of such position, he cites United States v. Strunk, 7 Cir., 467 F.2d 969, holding that where prejudice to the defendant from denial of a speedy trial lay only in delaying commencement of a federal sentence which could have been made concurrent with a state sentence, the defendant

was entitled to be credited with the period of time of unreasonable delay, but no vacation of the sentence or dismissal of the indictment would be proper.

■ For *Strunk* to apply, this Court must first find that the defendant had been denied a speedy trial to his prejudice. We do not so find in this case. The following quote is found in the *Strunk* case on page 972:

" . . . Since the sentence he received, the maximum term of five years, was to run concurrently with the one- to three-year sentence he was serving in the Nebraska State Penitentiary, defendant argues that the delay deprived him of the possibility of crediting the 306 days between indictment and trial to both sentences. In other words, he argues that he received in effect the maximum sentence plus 306 days. His argument is weakened by the possibility that the sentencing court might have postponed commencement of his federal sentence until after he had served his state sentence. . . . "

That case cited the United States Supreme Court in the case of Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L. Ed.2d 607:

" . . . At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from 'undue and oppressive incarceration prior to trial.' But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. . . . "

Appellant argues in his brief:

"Finally, as concerns Proposition of Law IV, since the sentence Appellant Broad-

nax received, seventeen years, was to run *consecutively* with that he is already serving, with respect to Case No. 765, the delay deprived him of fourteen months, or approximately 420 days between indictment and trial. In other words, Appellant Broadnax in effect received seventeen years plus fourteen months (or 420 days)." (Emphasis supplied.)

Appellant is arguing exactly opposite to the reasoning applied by the Court in the *Strunk* case. The Court there held Strunk to have been prejudiced since his second sentence could have run concurrently with another sentence he was serving in the Nebraska State Penitentiary, thereby the delay deprived him of the possibility of crediting 306 days to both sentences. That was the basis for the Court's finding that Strunk had been prejudiced by the delay. In the instant case, appellant is arguing that the seventeen-year second sentence was to run consecutively with one he was already serving. Therefore, taking appellant at his word, he could not begin serving the seventeen-year sentence until the end of his present sentence whatever the prior delay might have been between indictment and trial.

There is no showing in the record whether the instant sentence was to be concurrent or consecutive with the one the appellant was then serving, except for one statement by the court on Record Page 109:

"Mr. Christ: He requested a working appeal.

"The Court: Is that what you want?

"The Defendant: Yes, sir.

"The Court: In short, you don't want me to suspend sentence pending appeal. *Of course, you won't start serving until you get that other case over with.*

"It will go into effect, by operation of law, if I don't suspend it."

(Emphasis supplied.)

The judgment entry in the instant case does not show an order by the Circuit Judge that the seventeen-year sentence is to be served concurrently with any other sentence. See Title 45, Section 32, Code of Alabama 1940, as amended (1973 Cumulative Supplement). There can be no credit given on the instant sentence for the period of time between indictment and trial where the appellant was either serving in the penitentiary on a prior offense or awaiting trial in the county jail. Ryan v. State, 100 Ala. 105, 14 So. 766; Robinson v. State, 47 Ala.App. 51, 249 So.2d 872; Ex parte Cofield, 42 Ala.App. 344, 164 So. 2d 716.

This Court finds no reversible error in the record.

Affirmed.

All the Judges concur.