Cook was convicted of buying, receiving, concealing or aiding in concealing stolen property and was sentenced to eighteen months in the penitentiary. Prior to arraignment he was found to be indigent and counsel was appointed to represent him. He pleaded not guilty. After sentence was imposed, he gave notice of appeal. He was furnished a free transcript, and trial counsel was appointed to represent him on appeal.
Omitting the formal parts the indictment reads as follows:
 "The Grand Jury of said County charge that before the finding of this indictment Jerry Cook, whose name is to the Grand Jury otherwise unknown, did buy, receive, conceal or aid in concealing one (1) 1973 250 Kawasaki motorcycle bearing 1974 Alabama License Number M-46786, of the value of $250.00, the personal property of Dwight Lowery, knowing that it was stolen, or having reasonable grounds to believe the same was stolen, and not having the intent to restore it to the owner, against the peace and dignity of the State of Alabama."
The evidence was extremely conflicting. The tendencies of the State's evidence pointed directly to the guilt of appellant. In addition to a denial of guilt, appellant offered alibi testimony.
Billy F. Speegle, who was employed as an undercover agent for the Hartselle Police Department in investigating the drug traffic and making narcotic buys, testified that appellant was his first cousin and he had known him all of his life. On May 27, 1974, Speegle said appellant came to his home in Hartselle and told him he had a motorcycle he wanted to sell and Speegle asked him what kind it was and appellant said it was a Kawasaki. Speegle told him he would like to look at it and appellant said he would have to wait until it got dark before he could show it to him as he had the motorcycle hidden from view. That night appellant showed Speegle the motorcycle. It was located out on Highway 36, west of Hartselle, on Hulbrooks Road about 150 to 200 feet off the road in the woods covered with tree limbs that had green leaves on the branches.
Appellant agreed to sell the motorcycle to Speegle for $150.00 and told him it was hot. He further told him to get rid of it quick unless he had a place to store it and Speegle told him he thought he had a place to store it. Speegle further testified that he recalled a motorcycle being stolen at that time and he made a deal to buy this one from appellant and they agreed to meet later that night at the West Hartselle Baptist Church when he got a truck to haul. the motorcycle and the money to purchase it. When they parted, they agreed to meet at the church at nine o'clock that same night and Speegle went to Mr. W.L. Kyker, Chief of Police of Hartselle and got clearance from him to purchase this motorcycle and put it in the Chief's storage room at his home. *Page 857 
Speegle further testified that he borrowed a truck from a friend and picked up appellant and they went to the location where the motorcycle was hidden. That before they got to the road to turn off into the woods, appellant asked him to stop and turn off the truck lights. It was here that Speegle wrote a check for $150.00 payable to appellant and both of them loaded the motorcycle on the truck and they went back to West Hartselle Baptist Church where appellant got out of the truck. Speegle then drove to Chief Kyker's home where they stored it in the Chief's storage room. The check for $150.00 drawn by Speegle and payable to appellant, dated May 27, 1974, was introduced in evidence without objection. The check was endorsed and cashed by appellant.
Dwight Lowery, a fireman with the City of Hartselle, testified that on May 15, 1974, his 1973 Kawasaki motorcycle was stolen from his house and it was valued at $250.00. The next day he filed a report with the Hartselle Police Department giving a description of the motorcycle. The tag number was M46,786. He signed the stolen property report. This report was introduced in evidence without objection. The next time Lowery saw his motorcycle was on May 27, 1974, at the home of Chief Kyker and he identified it as being the motorcycle stolen from his house on May 15, 1974.
Appellant testified and denied the incriminating testimony of Speegle. Appellant testified that Speegle loaned him $150.00 to buy a car, and wrote him a check for that amount on May 26, 1974. He stated that the next day Speegle went with him to find a car he liked. He found a car and purchased it for $100.00 and gave the remaining $50.00 back to Speegle. He said he saw Speegle at his home on the night of May 27, 1974, but he did not accompany Speegle outside that night to sell him a motorcycle and never sold him a motorcycle.
On cross-examination appellant denied that he had ever discussed with one Radford Pannell that he was going to sell a motorcycle to Billy Speegle.
Appellant's wife, Linda Cook, testified that her husband bought a car on May 27, 1974, and Speegle loaned him the money to buy it. She said the loan was made by check and the check was written on May 26, 1974. She further testified that her husband arrived home at 12:00 noon on May 27 and did not leave the house the rest of the day.
Appellant's mother, Lois Cook, testified that on the night he bought the car, he did not leave home but spent the night with his family watching television.
On rebuttal the State called W.L. Kyker, Chief of Police of Hartselle, who testified that on May 27, 1974, Billy Speegle was working for the Hartselle Police Department as an undercover agent. Chief Kyker stated that he authorized Speegle to purchase the mtorcycle and that he observed the check, number 406, that Speegle was to give appellant and it was still blank at 8:30 p.m. on the night of May 27, 1974. He stated that Speegle turned the motorcycle over to him on the night of May 27 and it remained in his care, custody and control until Dwight Lowery positively identified it as belonging to him.
Radford Pannell testified that in May, 1974, appellant showed him a 250 Kawasaki motorcycle hidden under some bushes off a side road near Hartselle and that appellant told him he was going to sell the motorcycle to Billy Speegle.
Appellant was recalled to the stand and denied that he ever took Radford Pannell to see a motorcycle and that he was going to sell a motorcycle to Speegle or anyone else. Appellant admitted that he had previously been convicted for the offense of burglary. *Page 858 
Shortly after the alleged sale of the stolen motorcycle by appellant to Speegle appellant moved to the state of Georgia and did not return until December, 1974. He was arraigned on September 12, 1975. He claims that his Constitutional right to a speedy trial was denied him and the case against him should be dismissed.
It is settled law that speedy trial rights do not operate to deprive the state of a reasonable opportunity to prosecute defendants. A defendant cannot claim his Constitutional rights have been denied where the delay is caused by him, or where delays are made necessary by the law itself, or occasioned by want of time to try the case. Braden v. State, 49 Ala. App. 97,268 So.2d 877; Tiner v. State, 279 Ala. 126, 182 So.2d 859;Sellers v. State, 48 Ala. App. 178, 263 So.2d 156.
In Broadnax v. State, 54 Ala. App. 546, 310 So.2d 265 we held that a delay of 17 months between initial indictment and trial was not a denial of the defendant's right to a speedy trial.
Appellant claims the trial court committed reversible error in making inquiry as to how the jury stood numerically after the jury reported they were unable to reach a verdict. The record indicates the jury stood nine to three, but there was no indication as to how the majority stood on the question of guilt or innocence.
Under the cases of Gidley v. State, 19 Ala. App. 113,95 So. 330 and Orr v. State, 269 Ala. 176, 111 So.2d 639, such inquiry on the part of the trial judge was held to be reversible error on the ground that the trial judge should not by word or deed give the least appearance of duress or coercion.
It is never improper for the Court to urge upon the jury the duty of trying to reach an agreement so long as the Court does not suggest which way the verdict should be returned. Martin v.State, 29 Ala. App. 395, 196 So. 753; Jones v. State,56 Ala. App. 444, 322 So.2d 735.
However, we note in this case there were no exceptions reserved to the Court's supplemental charge. There was no motion for a mistrial and there was no motion for a new trial. In this posture of the record we cannot reach the claimed error. Shiver v. State, 49 Ala. App. 615, 274 So.2d 644; Danielsv. State, 53 Ala. App. 666, 303 So.2d 166; Wade v. State,49 Ala. App. 601, 274 So.2d 626.
We have carefully searched the record and have found no error upon which we can predicate a reversal. Accordingly, the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.