Appellant was convicted of robbery and the jury fixed his punishment at 20 years imprisonment in the penitentiary. At arraignment appellant pleaded not guilty in the presence of his court-appointed counsel. After sentence was imposed, he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent appellant on this appeal.
The evidence presented by the State is undisputed that on June 13, 1974, at approximately 4 o'clock in the morning the Pitt Grill located at 2259 Bessemer Road in Birmingham in Jefferson County, Alabama, was robbed by a lone bandit armed with a shotgun. Appellant did not testify nor did he offer any evidence in his behalf.
A few days after this robbery appellant was arrested and a lineup was conducted on June 20, 1974, and appellant was positively identified by several of the employees of the Pitt Grill.
In an unrelated case appellant was charged with the robbery of Alley Drug Store, 666 Tuscaloosa Avenue, in Birmingham on June 19, 1974. The lineup conducted *Page 553 
in the instant case was also applicable to the drug store robbery. The victims of the drug store robbery also positively identified appellant as the robber of that store.
Appellant was released on bond of $10,000 in each case on July 9, 1974, and was indicted in both robbery cases on August 9, 1974. Thereafter, appellant fled the State of Alabama and went to the State of Kentucky. He was arrested by the federal authorities in Paducah, Kentucky, on federal firearms violations and was given a three to five year sentence. He was serving this sentence in a federal penitentiary in Kentucky and at the same time he was being held as a material witness in a federal case pending in Birmingham, Alabama, in which an attorney was charged with giving a convict a handgun which was used in the commission of some criminal offenses.
Appellant was brought back to Alabama in November, 1974, by federal marshals to testify in the federal case against the attorney. For reasons best known to the federal authorities appellant was kept in the jail in Tuscaloosa, Alabama, and was transported to Birmingham from Tuscaloosa during the trial of this attorney which lasted several days.
After testifying as a Government witness against the attorney appellant was taken directly to Atlanta, Georgia, to serve the sentence that was imposed on him in Kentucky.
In October, 1974, the District Attorney in Jefferson County learned that appellant was in Kentucky in custody of the federal authorities and a conditional forfeiture was taken on the two ten-thousand dollar bonds in the State court. The knowledge that appellant was in Kentucky came to the District Attorney through appellant's father who talked to an Assistant District Attorney as he was concerned over having to pay the forfeited bonds. The father was told that the forfeitures were conditional only and that now they knew he was in federal custody in Kentucky, and steps would be taken to return him to Alabama to face the robbery charges and the forfeitures would not be made final.
The District Attorney knew that appellant was in custody of the United States Marshals as a key witness in the trial against the attorney in the federal court in Birmingham and that the State could not get custody of him during this period of time. The State had every reason to believe that appellant would be returned to Kentucky to again start serving the sentence that had been imposed on him. The federal authorities did not take appellant back to Kentucky but carried him to Atlanta to complete his federal sentence. This was done without the knowledge of the District Attorney and he lost contact with the appellant and did not learn that he was in the Atlanta prison until the spring of 1975.
On or about May 14, 1975, the District Attorney wrote a letter to the United States Marshal in Birmingham enclosing a certified copy of a writ of habeas corpus ad prosequendum and he also wrote a letter to the Warden of the United States Penitentiary in Atlanta, Georgia, enclosing a certified copy of the indictment and the writ of arrest.
At a hearing on appellant's motion to dismiss the indictment on the grounds that he had been denied his Constitutional right to a speedy trial appellant testified that he did not communicate with the District Attorney's Office while he was in the penitentiary in Kentucky or the penitentiary in Atlanta. Appellant further testified at the hearing to dismiss the indictment: "I haven't filed a motion for a speedy trial up to this point."
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101, the Supreme Court held there are at least four factors to take into consideration in dealing with speedy trial issues. They are: (1) length of delay, (2) the reason for delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. In Barker the Supreme Court held that where the defendant was not seriously prejudiced by more than five years delay between arrest and trial his Sixth Amendment right to a speedy trial was not violated. *Page 554 
In this case Alabama made a good faith attempt to gain custody of appellant after he committed the crime and fled the State and as soon as his whereabouts were known. There was only a few months delay between appellant's arrest and the date of his trial. Appellant did not assert his right to a speedy trial by his own sworn testimony. He did not show that he was prejudiced in any manner either by murky memories of witnesses in his behalf or, indeed, that he had any witnesses at all whose addresses had become unknown since the date of the crime. It would be charitable to say that appellant simply did not want a trial at all. We hold that under the facts in this case appellant was not denied his Constitutional right to a speedy trial.
For other cases in which this Court has dealt with speedy trial rights see Sellers v. State, 48 Ala. App. 178,263 So.2d 156; Diamond v. State, 49 Ala. App. 68, 268 So.2d 850; Ex parteCollins, 53 Ala. App. 577, 302 So.2d 551; Broadnax v. State,54 Ala. App. 546, 310 So.2d 265.
Appellant filed a pretrial motion for change of venue. This motion was based upon the widespread publicity by the news media concerning the federal court trial of a Birmingham attorney above mentioned in which appellant was the key witness for the Government. Appellant's name was mentioned in these news accounts of that trial. This trial was held and concluded several months before appellant was called to the bar to answer the charge of robbery committed by him in June of 1974. The motion for change of venue was overruled and denied. We hold there was no error committed by the trial court in this regard.Gilliland v. State, 291 Ala. 89, 277 So.2d 901; Mathis v.State, 52 Ala. App. 668, 296 So.2d 755.
In Mathis v. State, supra, this Court held the existence of widespread publicity alone does not indicate that a defendant cannot get a fair trial. "The law focuses on the impartiality of the trial jury."
In support of appellant's motion for change of venue he merely attached to his motion copies of the newspapers in reporting the case against the attorney. Counsel for appellant stated that he was going to submit his motion on copies of the newspaper articles and nothing more. The trial court responded that on voir dire examination of the venire he was going to ask each and every one of them if they had ever heard or knew anything about Joseph Robert Schillaci and if there was an affirmative response he was going to take them individually into his chambers and examine them as to what knowledge, if any, they had about the case and that he was going to accord the same right to the State and the defense. Nothing further appears in the record before us and we assume that no one on the venire stated that he or she had ever heard of appellant.
Appellant filed a pretrial motion to suppress the in-court identification of him as the robber based on a claim that the lineup identification was illegal and this fact tainted the in-court identification. Considerable testimony was taken on this issue. The question presented is whether the confrontation for identification purposes was so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny appellant due process of law.
The lineup was composed of six white males made up from the jail population. Appellant was number 4 in the lineup. The other men in the lineup were from three to 17 years older than appellant and were two to three and a half inches taller and 21 to 50 pounds lighter. There was a wide variety of different colored clothing worn by the men in the lineup. The appellant disputed this in his testimony. He claimed that all the men in the lineup wore City jail work clothes that consisted of blue denim pants and shirts and that on the front of the shirts appeared the word "jail". As to the composition of the lineup all the officers and the witnesses who viewed the lineup contradicted the testimony of appellant. The officers denied that the word "jail" was on the shirt of anyone. *Page 555 
Appellant stated that he had on a blue shirt and his pants had a real small blue and white check with flares and a cuff. He denied that he was wearing a white shirt.
Lieutenant James Roy Hipp and Sergeants Patmon and Cousins of the Birmingham Police Department conducted the lineup. Testimony developed that the number 1 man in the lineup had on jail clothes; number 2 was wearing a red and white shirt and blue jeans; number 3 was wearing a yellow and green shirt and brown pants; number 5 was wearing a green shirt and brown pants, and number 6 was wearing a white shirt and brown pants. The witnesses viewing the lineup testified that appellant was wearing a white shirt with brown and blue stripes.
All of the witnesses who viewed the lineup positively identified appellant as the robber of the Pitt Grill at approximately 4:00 a.m. on June 13, 1974. In addition they made a positive in-court identification of appellant as the bandit. At the conclusion of the hearing the Court denied appellant's motion to suppress. We hold the Court was correct in so ruling.Junior v. State, 47 Ala. App. 518, 257 So.2d 844; McCay v.State, 51 Ala. App. 307, 285 So.2d 117.
Laying aside the lineup identification this is a clear case of "independent origin." On the morning of the robbery Vivian Tarrant, Judy Harper, Pat Wiley, Brenda Sue Harbin and an unnamed janitor, all employees, were at work at the Pitt Grill. Vivian Tarrant was at work in the kitchen when appellant entered the back door and put a gun in her back and told her to go out front. Appellant followed Tarrant into the dining room and told everyone that this was a robbery and that he would hurt them if it was necessary. He directed the janitor to keep mopping and for someone to start the music so that it would appear that everything was normal. He ordered the night supervisor, Harbin, to give him all the money out of the cash register and he told Harper to get a sack to put the money in. After the money was put in the sack he walked over to the counter and picked up the sack of money and in doing so, he was within a few feet of the employees of the Grill and they got a clear view of his face. It took seven to ten minutes to complete the robbery and during this period of time the employees never took their eyes off the undisguised robber. After getting the money he ordered all the people in the place to go into the washroom and lie flat on the floor with their faces on the floor. He told them that they must remain on the floor for five minutes and that he had someone on the outside who would take care of them if they moved.
These witnesses testified they would never forget the bandit's face if they were to see him five years later.
In Hannon v. State, 48 Ala. App. 613, 266 So.2d 825, we held that the in-court identification was not tainted by the lineup. In Hannon the victim of the robbery "eye balled" the robber for five minutes during the robbery. The witnesses in the instant case "eye balled" appellant at close quarters from seven to ten minutes.
Appellant claims that the District Attorney commented on the failure of the appellant to testify. We have carefully reviewed the argument of the District Attorney and found that he made no direct reference to appellant's failure to take the witness stand.
The general rule is that statements by the prosecutor to the effect that the State's evidence is undenied or uncontroverted are merely indirect references to the defendant's failure to testify and do not violate the statute. Sellers v. State,48 Ala. App. 178, 263 So.2d 156; Whistenant v. State, 50 Ala. App. 182, 278 So.2d 183; Gore v. State, 45 Ala. App. 131,226 So.2d 674; Williams v. State, 43 Ala. App. 343, 190 So.2d 556.
In Young v. State, 283 Ala. 676, 220 So.2d 843, the Supreme Court said:
 "Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion to exclude the state's evidence, the refusal to give the affirmative charge and the *Page 556 
overruling of a motion for new trial, does not constitute error. Drummond v. State, 37 Ala. App. 308, 67 So.2d 280; Wade v. State, 24 Ala. App. 176, 132 So. 71."
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.