HARRIS, Judge.
Appellant was convicted of robbery and the jury fixed his punishment at imprisonment in the penitentiary for a term of fifteen years. At arraignment appellant pleaded not guilty in the presence of his *557 court-appointed counsel. After being sentenced appellant gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent the appellant on this appeal.
In this case as well as the case of Schillaci v. State, Ala.Cr.App., 347 So.2d 552, this day decided, appellant was a federal prisoner and was brought to Birmingham, Alabama, pursuant to a writ of habeas corpus ad prosequendum and was in the custody of federal marshals to stand trial on two state robbery indictments.
The robbery in the instant case involved the Alley Drug Store located at 666 Tuscaloosa Avenue, Southwest, Birmingham, Jefferson County, Alabama, which occurred between 5:00 and 5:30 a. m. on June 19, 1974. Approximately $1300.00 was taken in this robbery.
When this ease was called for trial on August 5, 1975, before Judge Wallace Gibson, the Court incorporated appellant’s Motion to Dismiss, Motion for Change of Venue, Motion to Dismiss the Indictment, Motion to Suppress the Lineup Identification and the In-Court Identification which were heard previously in both cases before Judge William H. Cole. Judge Cole ruled adversely to appellant on all of these motions.
The rulings of Judge Cole on the above motions were treated at length by this Court in appellant’s case, 6 Div. 101, supra, and everything we said in that case with respect to said motions is adopted by reference and incorporated in this opinion in haec verba, including, but not limited to, the citations of authorities relied upon in affirming that case.
Prior to trial appellant made a motion that Judge Gibson voluntarily disqualify himself on the ground of some past dealings in criminal cases involving appellant to the end there would be no prejudice against appellant in this case. Judge Gibson responded that the name “Schillaci” meant nothing to him and that he did not know anything about the pending robbery case. He declined to withdraw from the ease saying that he was not biased or prejudiced in any way against appellant and that he was going to give the State and the defendant a fair and impartial trial. The record before us shows that appellant was accorded a fair and impartial trial and this was admitted by appellant at the time he was sentenced.
From the record:
“The Court: All right, you have heard the verdict of the jury, Schillaci. Do you have anything to say as to why sentence should not be pronounced against you at this time?
“The Defendant: No, sir, you honor. None whatsoever. It was fair.”
We now turn to the evidence in this case. The evidence presented by the State shows beyond peradventure that the drug store was robbed by a lone bandit with a pistol in the early morning hours of June 19, 1974. Appellant did not testify but offered the testimony of some witnesses in attempting to establish an alibi.
Mrs. Melba Roberts testified that she was employed by Alley’s Drug Store at the time of the robbery and that her hours of employment were from 11:00 at night until 7:00 in the morning. She further testified that between 5:00 and 5:15 on the morning of June 19, 1974, a man came in the drug store and asked her for a package of Kool cigarettes. She gave him the cigarettes, and he paid her 54 cents for the pack and she rang the cash register and put the money in it. At this point the man pulled a pistol and stuck it in her ribs and said, “Let’s go to the back where the man is.” The man kept the pistol on her ribs as they walked to the back of the store.
Mr. Richard Hugh Cleere was the pharmacist on duty. Mr. Cleere and Mrs. Roberts were the only people in the drug store at this time. When Mrs. Roberts and the robber reached the back of the store the man told Mr. Cleere, “I want all your narcotics and all your money, and don’t try anything or she will get it.” Mr. Cleere unlocked a small cabinet in which some money was kept and the bandit ordered Mr. Cleere to get a sack to put the money in. After the money was put in the sack the bandit handed the sack of money to Mrs. *558 Roberts and told her to hold it. He then ordered Mr. Cleere into the bathroom and locked the door. The bandit then ordered Mrs. Roberts to go to the cash register in the front part of the store and open it. He took the money from the cash register and put it in the sack with the other money. After putting the money in the sack he carried Mrs. Roberts to the bathroom and locked her up with Mr. Cleere. After they were both locked in the bathroom Mr. Cleere pulled his pistol and shot several times through the locked door.
Mrs. Roberts pointed to appellant in the courtroom and stated that she could say without a doubt that he was the man who robbed her. She further stated that she attended a lineup on the afternoon of June 20, 1974, some 36 hours after the robbery and identified the appellant as the man who robbed her, saying, “When he walked in, I seen him, and I knew he was the man, and I didn’t really look at the rest of them.” Mrs. Roberts picked appellant out of the lineup immediately and did not study the other people.
Mr. Cleere testified that he saw appellant by the pharmacy department with a pistol in his hand. He said his hours of employment were from 10 o’clock at night until 7:00 in the morning. He further testified that the man told him this was a robbery and he wanted the narcotics and the money and he was pointing a .25 automatic pistol at him. Mr. Cleere said that he had a little cabinet under the pharmacy counter and that he unlocked it and took the money out. The bandit ordered him to get a sack to put the money in and he obeyed this order. He stated the robber overlooked a cash register in the back. He said the robber told him, “Well, if I get caught by the police tell them I didn’t get the narcotics. I don’t want a federal charge against me.” After Mr. Cleere put the money in the sack the man carried him to the bathroom and locked the door. A few minutes later the robber brought Mrs. Roberts to the bathroom and locked the door on both of them.
Mr. Cleere further testified that when Mrs. Roberts was behind him he pulled his pistol and shot eight times through the door hoping to hit the robber. He stated that the man got a total of a little over $1300.00, and that no part of this money had been recovered.
On cross-examination Mr. Cleere stated that the next day he attended a lineup of six men who were all dressed in different clothes and he unhesitatingly identified appellant as the bandit who robbed the drug store the day before the lineup was held. He said he recognized him instantly and he could not be mistaken that appellant was the robber. He said that the robbery took place in about ten minutes, in close quarters, and he got a clear look at the undisguised face of the man who held a pistol on him on the morning of June 19, 1974.
The trial court permitted the defense to go back into the lineup identification even though Judge Cole heard all the testimony previously on the identity issue and held the lineup was legal in every respect.
When the State rested appellant made a motion to exclude the State’s evidence without assigning any grounds. The motion was overruled and denied.
Appellant called three police officers and proved that they had stopped him a little after 4:00 a. m. and did not let him go until about 4:15 to 4:25 a. m. and this was at a point several blocks from the Alley Drug Store. He was attempting to establish the time frame and the distance from the Alley Drug Store made it impossible that he could have committed the robbery between 5:15 and 5:30 that morning.
Appellant also called Ms. Sarah Dumas, assistant to the head bookkeeper of the City National Bank of Birmingham and proved by her that on May 17,1974, he deposited to his checking account the sum of $5,000.00 She further testified that on that same day appellant withdrew $1,000.00 and that on May 21, 1974, he withdrew another $1,000.00; that on May 29 he withdrew $1,000.00 and that on June 6, 1974, he withdrew $2,000.00.
On cross-examination the witness testified that on June 6, 1974, the entire *559 $5,000.00 had been withdrawn and appellant’s account in the City National Bank was closed.
On rebuttal the State called Captain Carl D. Garrett of the Birmingham Police Department who testified that he saw appellant on June 19,1974, at approximately 4:00 a. m. in the 2000 block of 5th Avenue North and that he had been stopped by two police officers. He stated he saw him on the outside of the car and that he had on a dark suit, either navy or black, and had on a white shirt and tie. That he was wearing real shiny shoes — “looked like patent leather shoes.” He stated there were two black females in the car with him but after four or five minutes appellant left in his car alone.
There is a presumption that a judge or one sitting in a judicial capacity is qualified and unbiased and one who alleges that a judge is unqualified or biased has a substantial burden to show grounds therefore. Street v. Hutto, 46 Ala.App. 324, 241 So.2d 848; Walker v. State, 38 Ala.App. 204, 84 So.2d 383; Johnson v. State, Ala.Cr.App., 335 So.2d 663; Ex parte White, 53 Ala.App. 377, 300 So.2d 420.
There was absolutely no showing that Judge Gibson was in any manner disqualified in this case and as we have pointed out, appellant stated at the time he was sentenced that he had received a fair trial.
We have held many times that alibi testimony, like all other evidence in a criminal prosecution, is an issue to be determined by the jury. Dulaney v. State, 56 Ala.App. 374, 321 So.2d 713; Ala.Dig.Crim.Law, Key No. 739(2).
We find no reversible error in this record and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.