182 So.2d 859

Cecil TINER

v.

STATE.

4 Div. 242.

Supreme Court of Alabama.

Jan. 6, 1966.

Rehearing Denied Feb. 10, 1966.

See also 278 Ala. 15, 174 So.2d 694.

Jack W. Smith, Geneva, for appellant.

Richmond M. Flowers, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARWOOD, Justice.

This appeal is from a judgment, entered pursuant to a jury verdict finding the appellant guilty of murder in the first degree, and fixing his punishment at imprisonment in the penitentiary for life. This is a second appeal in this case. Upon his first trial the appellant was adjudged guilty of murder in the first degree, and his punishment was fixed at death. Tiner v. State, 271 Ala. 254, 122 So.2d 738. This judgment was reversed by this court, and the second trial resulted in the judgment above mentioned.

In the opinion in the first appeal (271 Ala. 254, 122 So.2d 738) the facts were set out in detail. On the second trial the facts developed were substantially the same as those shown in the appellant's original trial, and we therefore will not burden this opinion with a lengthy repetition of these facts, but refer those interested to the facts as set forth in the first appeal, supra.

We think it sufficient to observe that the facts in each case show a coldblooded act of murder by this appellant and his companion and confederate William Hable. The victim of the murder was James Cuthbert Woodham who at the time he was shot

to death was Sheriff of Geneva County, Alabama.

A confession made by the appellant, and introduced in evidence by the state in the present trial was to the effect that after the appellant and Hable had stolen a safe from a hospital in Hartford, Alabama, they drove out on a dirt road in Hartford where they broke the hospital safe open, removed some narcotics therefrom and took a "shot"; the appellant and Hable then drove through the town of Geneva and were stopped by a car driven by Sheriff Woodham; the sheriff looked in the trunk of appellant's car and went to the right side of the car; the appellant helped the sheriff pull the back seat over on the front seat, and during this operation the sheriff found a paper sack on the front seat of the appellant's car; the paper sack contained narcotics; as the sheriff started to take the sack and the seat out of the automobile, this appellant drew his pistol and shot the sheriff one time; as the sheriff fell he dragged the car seat and the sack with him; the sheriff then started shooting and the appellant ran to the left of his automobile and fired three more shots; the sheriff then started toward his own automobile and the appellant ran to his automobile and drove off after picking up his companion Hable.

The appellant and Hable then drove south on dirt roads; at some point they threw the gun over a wooden bridge; later the appellant and Hable left the appellant's automobile taking with them the one remaining bottle of morphine tablets which was later left on the top of a filling station in Florida where the appellant was apprehended as he came down from the roof of the filling station.

In the present trial the appellant testified that he had walked off down the road a short distance at the time of the shooting, and that he did not shoot Sheriff Woodham.

William Hable, now under life sentence for the murder of Sheriff Woodham, appeared as a witness for the appellant at this second trial. He did not testify in the first trial.

Hable's testimony was to the effect that Tiner had walked off down the road and that Sheriff Woodham had caught hold of him and he, Hable, was jerking to get loose when a shot was fired. Hable testified that he did not have a gun, and that Sheriff Woodham must have shot himself as he attempted to get his pistol out of the holster. Evidence introduced by the state showed that Sheriff Woodham, a large man, was righthanded, and that the bullet causing his death entered his body on the left side.

Some six points are argued by counsel for appellant as constituting error in the proceedings in this second trial.

1. That the confessions and statements made by the appellant were improperly admitted into evidence over appellant's objections in that appellant was without counsel at the time the confessions or statements were made.

2. Evidence illegally obtained without a search warrant was improperly admitted over appellant's objections.

3. The appellant was denied a speedy second trial.

4. The court erred in admitting into evidence transcriptions of evidence of witnesses testifying at the first trial who were not present at the second trial.

5. The jury separated during their deliberations.

6. Failure of the court to ex mero motu appoint a lunacy commission to examine into appellant's mental condition.

### Confessions

Several statements made by the appellant at the time of his arrest and afterwards were introduced in evidence over appellant's objections. Two of these statements were confessions

The evidence shows that just prior to appellant's arrest, John Till, Special Agent of the Federal Bureau of Investigation, Major John Cloud of the Alabama Highway Patrol, and John Williams, an investigator for the State of Alabama, and William Hable, appellant's confederate, had just arrived at a service station a few miles east of Pensacola, Florida. These officers knew of the shooting of Sheriff Woodham. As the automobile of the officers was halting, the appellant was observed walking or running toward some woods to the rear of the service station. He was overtaken by Major Cloud and Williams and returned to the officer's automobile where he was handcuffed. Till informed the appellant he was under arrest, and he was searched. At this time the appellant spat out two rolled up fifty dollar bills he had concealed in his mouth. Tablets, later shown to be narcotic, were inside the rolled bills. At this time he told the officers his name was Cecil Tiner, and further stated that he had spent the night on the roof of the service station, and had come down when a helicopter had flown over and he was afraid he had been observed.

The officers and their prisoners then drove to a Florida Highway Patrol substation. On this drive the appellant stated that he had put the bills in his mouth because in previous arrests officers had taken money from him and had never returned it.

█ These two statements were of facts collateral to any criminal offense, not criminating in themselves, and dependent on other and additional evidence to create any incrimination. Such statements are deemed voluntary under our decisions. See Baker v. State, 35 Ala.App. 596, 51 So.2d 376, where this doctrine is discussed in detail.

Even so, before the above statements were received in evidence each of the officers present testified that no threats or coercion and no reward or hope of reward was offered the appellant to induce him to make the statements. The predicate of voluntariness thus established did not include any testimony to the effect that the appellant was informed that he could remain silent or that he could procure counsel. Because of the omission in the predicate of these last two mentioned factors, counsel for appellant argues that the statements were erroneously admitted under the doctrine of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

In Escobedo the facts were that after his arrest Escobedo repeatedly requested to be permitted to consult his attorney. These requests were denied. Further, Escobedo's attorney had visited the jail and asked to see Escobedo. This request was likewise denied. Escobedo, when questioned by the police was not advised of his right to remain silent.

In Duncan v. State, 278 Ala. 145, 176 So.2d 840, Justice Lawson reviewed in detail the interpretation of Escobedo made by various courts, both federal and state. Some courts, particularly California and Oregon, have held that a confession by an accused, on whom suspicion has focused, can not properly be received in evidence even though he did not request counsel, unless it is shown that the accused intelligently waived counsel, and no waiver can be presumed if the interrogating officers did not inform the accused of his right to counsel or his right to remain silent.

On the other hand, the decisions of a number of courts were set forth by Justice Lawson wherein the doctrine of Escobedo was strictly limited to the factual situation of Escobedo, and the effect of the holdings in these jurisdictions strictly interpreting Escobedo is that if a confession is otherwise shown to be voluntary, the predicate of voluntariness is sufficient even though the suspect was not informed of his right to remain silent and had not requested permission to confer with counsel.

We will not cite the authorities set forth in *Duncan,* supra, but observe that the effect of Duncan is to place the views of this court in accord with the views of those

jurisdictions limiting the doctrine of Escobedo to the facts of that case.

Since the decision and opinion of this court in *Duncan* (30 June 1965), the United States Court of Appeals for the Second Circuit published an opinion on 22 November 1965, in United States of America v. Cone, 354 F.2d 119. The question for decision was "whether Richard Cone's statements made to customs agents on the street a few minutes after his arrest were properly admitted at his trial. The agents did not advise Cone of his right to remain silent and that what he said might be used in evidence. Cone did not ask to consult counsel prior to making the statements, nor was he advised of his right to do so."

In the course of the opinion the court made the following observations:

"The agents did what was required by all accepted police practices and what any citizen would have expected them to do under the circumstances when they questioned Cone fairly and noncoercively.

\* \* \* \* \* \*

"It was the duty of the agents to question Cone and all others who might be concerned regardless of whether they already had enough information to justify Cone's arrest—as it is conceded that they had here—and regardless of whether, by any test, they had enough evidence to prosecute. It has been suggested that the process of questioning suspects may be dissected into 'investigatory' and 'accusatory' phases and that certain legal conclusions, such as whether the Sixth Amendment's right to counsel 'attaches' and requires that the suspect be advised of his rights to silence and counsel, should flow from a judicial finding that police questioning has passed beyond mere investigation. We do not consider this a realistic doctrine for most cases. It was not the job of the agents questioning Cone, nor were they qualified to make nice decisions about the suf-

ficiency of the evidence they possessed; nor could they at the time of arrest determine what charges should be formally made and against whom. Agents in hot pursuit of those whom they have reason to believe may be implicated in a crime which has just been discovered cannot be required 'on the spot' to decide difficult questions of the sufficiency and quantum of proof.

\* \* \* \* \* \*

"While *Escobedo* may have extended the Sixth Amendment's protection by shifting the focus of the examination by which the admissibility of pre-arraignment statements is tested, that decision cannot be divorced from its particular facts; we would be misreading *Escobedo* if we extended it to embrace every inculpatory statement, made prior to arraignment and without full warning, by any person whom the police suspected of crime.

\* \* \* \* \* \*

"We are not persuaded that any of the provisions of our Federal Constitution, interpreted in the light of necessities of our day, dictates a constitutional rule that a suspect must be advised of his rights to silence and the advice of counsel immediately upon his arrest and before he is questioned or makes any statement to the police.

\* \* \* \* \* \*

"Richard Cone was fairly treated; he was questioned in accordance with the law and proper police procedures. He voluntarily made a statement to government agents and there is no reason to believe that it was not truthful. His constitutional rights were not violated by the admission of such relevant evidence. His conviction should stand."

■ We are in accord with the above views, and hold that the statements of the appellant relative to leaving the roof of the service station, and why he had con-

cealed the paper money in his mouth were properly admitted as voluntary, even if the doctrine of our cases to the effect that collateral statements not criminating in themselves are deemed voluntary be looked upon askance by some other jurisdiction.

The record shows that the arresting officers and their prisoners (Hable and the appellant) remained at the Florida Highway Sub-station only a short while when they proceeded on to the county jail in Pensacola. The prisoners were not questioned at the Sub-station.

After the group arrived at the jail the appellant and Hable requested that they be allowed to telephone Mr. Jules Meyer, an attorney in Dallas, Texas. Permission to make this call was granted, and the appellant and Hable did talk to Mr. Meyer.

After this telephone conversation the appellant and Hable agreed to waive extradition to Alabama, and were interrogated by law enforcement officers. In this interrogation the appellant orally confessed his part in the theft of the narcotic safe and his presence at the shooting of Sheriff Woodham, though he refused to say who had fired the gun, saying he would make a statement as to this fact at a later time.

█ A predicate to the effect that appellant had not been threatened or abused at the time he made this confession, nor offered any reward or hope of reward for making the statement was thoroughly established before this statement was received in evidence.

We hold this confession was properly received in evidence. The fact that the appellant was permitted to call his attorney in Dallas and talk with him prior to making this statement distinguishes the present situation from *Escobedo* to the extent that *Escobedo* should be considered inapplicable. Further, we consider our discussion relative to the proper admission of the two earlier statements by the appellant, in the aspect that they were voluntary, to be equally applicable to any consideration of the voluntariness of this confession made by the appellant in the Pensacola jail.

The evidence shows that Sheriff Woodham did not die from the effects of his bullet wound until early on the morning of 8 August 1957, some three days after he was shot on 5 August 1957.

On 8 August 1957, John Williams went to the Houston County, Alabama, jail, where Tiner was then incarcerated. Williams had not gone to the jail to interview Tiner, but in the course of his visit he did talk to Tiner in the presence of Sheriff Alvin Davis of Houston County. In this conversation Tiner made a full confession to Williams of the events leading to the shooting of Sheriff Woodham, and stated that he, Tiner, had pulled his pistol and shot Sheriff Woodham one time when the sheriff inquired as to a paper sack on the seat of the automobile. Williams then proceeded to write out in longhand Tiner's statement. Upon completion of the writing Williams asked Tiner if he would like to read the statement and Tiner replied he preferred that Williams read the statement to him. This was done, and Tiner stated that the statement was correct. However, Tiner further told the officers he would not sign the statement unless he was given a shot of dope. The demand was refused. Williams' transcription of appellant's confession and his account of the original oral confession were each received in evidence over the appellant's objections. Again, however, prior to the introduction of each statement both Williams and Davis testified that no threats or force, reward, or hope of reward, had been made prior to the statements by Tiner. It is also to be noted that the transcription of the confession made by Williams begins with the declaration: "I, Cecil Tiner, W. M., age 25, willingly make the following statement to John Williams, Investigator for the State of Alabama, and Sheriff Alvin Davis. I make it without force or threats or promise of reward, and I realize that what I say may be used in a court of law." This pre-

amble was read to Tiner at the time the transcription of his confession was read.

This appellant is not a naive first offender. The record shows that he has been in and out of penitentiaries on several prior occasions for various offenses. The only inference that can be drawn from the record is that Tiner, though drug addicted, is sophisticated in the ways of the criminal world, and the criminal trial processes. So far as disclosed by the record he was never at any time mistreated by any officers having him in charge. We hold that under the totality of the evidence his confessions were voluntary and were properly received in evidence.

Counsel for appellant also argues that since the predicate of voluntariness was laid in the presence of the jury, the holding of the United States Supreme Court in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, necessitates a reversal of this judgment.

The record discloses that in no instance did counsel for appellant request that the hearing on the question of the voluntariness be out of the presence of the jury. There was no evidence tending to contradict the voluntariness of any of the statements received in evidence. Tiner testified as a witness in his own behalf. He in no wise questioned the voluntariness of any of the statements, nor did he deny their correctness other than to deny on the stand that he had shot Sheriff Woodham, this for the reason: "I just know I wouldn't kill anyone."

We hold that under the circumstances as disclosed by the record before us that the doctrine enunciated in Jackson v. Denno, supra, does not require a reversal of this judgment. Sanders v. State, 278 Ala. 453, 179 So.2d 35.

*Evidence produced as a result of Search of Appellant at the time of his Arrest*

Counsel for appellant argue that certain items taken from the person of Tiner at the time of his apprehension were improperly received in evidence in that Tiner's arrest was unlawful. The alleged illegality of the arrest, counsel assert, arises from the fact that the officers did not have a warrant at the time of Tiner's arrest, and no probable cause for believing that Tiner was the person involved in the shooting of Sheriff Woodham.

The arrest of Tiner took place in Florida. The laws of arrest are to be determined by the law of the place an arrest is effectuated. There was no showing as to the Florida laws of arrest. We take judicial notice that such states as Louisiana, Florida, and Texas, are not of common origin with those colonies recognizing the common law as the source of their jurisprudence. Castleman v. Jeffries, 60 Ala. 380; Peet & Co. v. Hatcher, 112 Ala. 514, 21 So. 711. We judicially know that Florida was acquired by purchase from Spain in 1819, and will not presume that the common law prevails in Florida in the absence of proof of its adoption. Bank of Cottonwood v. Hood, 227 Ala. 237, 149 So. 676.

In such situation it is the doctrine of our cases, in the absence of proof of the law of a sister state not of common origin with Alabama, that the presumption will be indulged that the law of such sister state is the same as the law of Alabama, even our statutory law. Kennebrew v. Automatic Electric Shock Machine Co., 106 Ala. 377, 17 So. 57; Peet & Co. v. Hatcher, supra; C. D. Chapman & Co. v. Cullifer, 23 Ala.App. 31, 120 So. 297; Bank of Cottonwood v. Hood, supra.

By the terms of Section 154, Title 15, Code of Alabama 1940, an officer may arrest any person at any time without a warrant when a felony has been committed and the officer has reasonable cause to believe that the person arrested committed the felony.

The officers arresting Tiner knew that Sheriff Woodham had been shot, and that a felony had been committed. They were

engaged in a general search for the sheriff's assailant or assailants. Just as they stopped at the service station Tiner was seen walking or running towards a wooded area to the rear of the service station

Where officers have reasonable cause to believe a felony has been committed, the observed conduct of a suspect may, under certain circumstances, furnish "reasonable cause" for believing the suspect to be the perpetrator of the felony. United States v. Heitner, (2 CCA), 149 F. 2d 105.

Flight, though not conclusive, is usually evidence of guilt, and if a suspect flees at the approach of officers having knowledge of, or reasonable cause to believe, that a felony has been committed, there can be no doubt but that such conduct furnishes a reasonable cause for believing that the suspect committed the felony. United States v. Kancso, (2 CCA), 252 F.2d 220; Price v. State, 227 Md. 28, 175 A.2d 11.

We hold that the arrest of Tiner under the shown facts was a lawful arrest. The arrest being lawful, the officers were legally warranted in searching Tiner's person. The search revealed over $2,500, found partly in his pockets and in both shoes, as well as a cigarette package containing some white tablets as well as cigarettes. The tablets were later shown to be narcotics. All of these items were properly received in evidence.

*Speedy Trial*

Sheriff Woodham was shot on 5 August 1957. The appellant was arrested on 6 August 1957. Woodham died on 9 August 1957, and on that same day the appellant was charged by affidavit and warrant with murder in the first degree. On 27 August 1957, he was indicted for murder in the first degree. On 18 October 1957, he was arraigned, and on 4 November 1957, he was adjudged guilty and sentenced to death.

This judgment was reversed by this court on 14 July 1960.

After reversal and remandment the appellant was again arraigned on 5 November 1960, and was again tried and convicted on 18 November 1960.

On 17 December 1960, the appellant, pro se, gave notice of appeal, and requested a free transcript.

The appeal coming on to this court on the then record proper, and request for a free transcript of the evidence, this court on 2 November 1961, remanded the cause to the Circuit Court with the observation:

"Being advised that there was pending in the Alabama legislature a bill designed to meet the holding in *Griffin v. People of the State of Illinois*, 351 U.S. 12, 76 S.Ct. 585 [100 L.Ed. 891], 55 A.L.R.2d 1055, we withheld consideration of this appeal pending action on said bill. The bill having been enacted into law (Act No. 62, appvd., Sept. 15, 1961), this case is due to be remanded to the trial court pursuant to § 9 of said Act."

*Tiner v. State*, 273 Ala. 36, 134 So.2d 197.

On 5 January 1962, the court below denied appellant's request for a free transcript, and this order was appealed. On 26 January 1962, the court entered an additional order estimating the cost of the transcript at five hundred dollars.

In April 1965, this court reversed the order of the lower court denying the appellant a free transcript. *Tiner v. State*, 278 Ala. 15, 174 So.2d 694. On 22 May 1965, the lower court entered an order granting the appellant a free transcript.

The full record was thereafter filed in this court and submitted on 15 October 1965.

It is apparent from the above recitation that no delay in trying the appellant has resulted from any arbitrary

action on the part of the prosecutors. The delays have resulted in the appeal processes, and from appellant's efforts to secure a free transcript. Both trials were held promptly when the prosecution was in a position to act, and no continuances were ever requested or granted.

As stated in State v. Patton, 260 N.C. 359, 132 S.E.2d 891:

"The Court said in Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950, 954: 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.'

"The constitutional right to a speedy trial is designed to prohibit arbitrary and oppressive delays which might be caused by the fault of the prosecution. Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393; State v. Hadley, Mo., 249 S.W.2d 857. The right to a speedy trial on the merits is not designed as a sword for defendant's escape, but as a shield for his protection."

The right to a speedy trial does not operate to deprive a state of a reasonable opportunity of prosecuting criminals, and an appellant cannot claim his constitutional right to a speedy trial has been denied where the delay is occasioned by actions initiated by himself, or where delays are made necessary by the law itself. Sample v. State, 138 Ala. 259, 36 So. 367. To the same effect see also Ex parte Meadows, 71 Okl.Cr. 353, 112 P. 419.

Not only has there been no capricious, oppressive, or arbitrary delay on the part of the prosecution in putting the appellant to trial, but the prosecution has acted with diligence and dispatch in trying the appellant when his trial was feasible.

### Introduction of Evidence of Witnesses given at Former Trial

Counsel for appellant argues that the court erred in permitting the evidence of three witnesses who testified at Tiner's first trial to be introduced in evidence in the present trial over his objection.

The authenticity of the transcript of the evidence of the first trial was stipulated.

The evidence shows that all three of these witnesses were residents of either Florida or Texas at the time of the second trial.

Our rule is that upon proper proof of the absence from this jurisdiction of a witness who has previously appeared and testified under oath before a tribunal of competent jurisdiction, then such previous testimony may be received in evidence in a subsequent re-trial of the same case. Washington v. State, 274 Ala. 386, 148 So.2d 206, and numerous authorities cited therein.

There is no merit in this asserted claim of error.

### Separation of the Jury

Toward the end of the trial the record shows the following occurrence outside the presence of the jury:

"Court: Reporter, this is for the record now. I was informed during the noon hour by the sheriff that one of the jurors in this case got sick, and that Doctor Blakeney was call (sic) in to and did attend this juror. I don't make this statement with any idea of criticism toward anyone, because I think it was inadvertent and something that could not have been anticipated by any of us, and I now call as the court's witness Dr. W. H. Blakeney."

At the conclusion of Dr. Blakeney's testimony, Sheriff Braxton and C. B. Reeves, the bailiff having the jury in charge, were also examined.

The substance of the combined testimony of these three witnesses was that during the noon recess the jury was being served

dinner in the dining room in the jail. One of the jurors, Mr. Griggs, complained of being ill. Dr. Blakeney was summoned to attend him. When Dr. Blakeney arrived the juror was taken into the living room of the jail, which adjoined the dining room, and there, in the presence of Sheriff Braxton and Mr. Reeves, Dr. Blakeney examined the juror, and at the completion of his examination, Dr. Blakeney gave the juror a shot of penicillin.

Dr. Blakeney, Sheriff Braxton, and Mr. Reeves, all testified that the only statements made during this time were inquiries by Dr. Blakeney as to the juror's symptoms, and the juror's replies. The trial was at no time mentioned or alluded to.

At the conclusion of the testimony of these three witnesses, the court asked defense counsel if he had any motion to make, to which counsel replied, "As far as the defendant is concerned, of course we can't waive anything, but we are in position to leave it to the discretion of the court."

▉ In this state of the record we cannot see that there is anything before us for review. Even so, had defense counsel made a motion for a mistrial, the only ruling the court could properly have made would have been to deny the motion since the evidence introduced clearly rebutted the presumption of harm to the appellant resulting from the temporary separation of the ill juror from the rest of the jury as above outlined. King v. State, 266 Ala. 232, 95 So.2d 816; McElroy v. State, 30 Ala.App. 404, 7 So.2d 508.

*Non-Appointment of Lunacy Commission*

Counsel for appellant argues that in view of appellant's plea of not guilty by reason of insanity, and his long history of addiction to narcotics, the court erred in failing to ex mero motu appoint a lunacy commission to examine into the mental condition of the appellant.

▉ There is no merit in this contention. At no time did appellant move to have his mental condition inquired into. The court was under no duty to appoint a lunacy commission or to obtain a report of the Superintendant of the Alabama State Hospital under the provisions of Section 425, Title 15, Code of Alabama 1940. The court has the right, but not the duty, to seek such aid for advisory purposes when it deems such aid will be helpful. Howard v. State, 278 Ala. 361, 178 So.2d 520; Coon v. State, 278 Ala. 581, 179 So.2d 710.

It is our conclusion that this record is free of any error probably injurious to any substantial right of this appellant and the judgment is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.