The appellant was indicted and convicted for robbery. The petit jury fixed punishment at fifteen years in the penitentiary and the trial court entered judgment and sentence accordingly. Both of the appellant's retained trial counsel have been appointed to represent him on this appeal. *Page 1373 
The only questions raised on appeal concern the admissibility of a confession received in evidence before the trial court. The appellant contends that the state failed to establish the facts that the confession was voluntary and that the accused fully understood the nature of the rights asserted to have been waived. The appellant also urges that the procedures employed in obtaining the confession violated the defendant's Sixth Amendment right to the effective assistance of counsel.
The question of the sufficiency of the evidence is not presented to us for review. There was no motion to exclude the state's evidence, no request for the affirmative charge, no exceptions reserved to the oral charge, and there was no motion for a new trial. Hunter v. State, Ala.Cr.App., 331 So.2d 406
(1976); Hall v. State, 57 Ala. App. 132, 326 So.2d 660 (1976).
Around 11:30 on the morning of Monday, October 7, 1974, the body of Robert Cox, the manager of the Exxon Service Station located on Weible Drive in Fairfield, Alabama, was found in his office at the service station. Examination by a deputy coroner and a subsequent autopsy revealed that Cox had been shot in the head with a small caliber bullet. At trial the deputy coroner testified that the bullet was of a small caliber despite his previous testimony at a preliminary hearing that it was a .38 caliber bullet. A state toxicologist testified that the bullet was a .22 long rifle bullet.
Although a station employee testified that there had been between two and three thousand dollars in the office around 9:30 A.M., when Cox's body was discovered the money was missing.
On the Sunday following the robbery, John Henry Robinson saw the appellant standing on the corner in front of the house of Michael McConnico. Robinson stopped his automobile and had some conversation with the appellant. In compliance with the appellant's request, Robinson loaned him twenty dollars so he could get out of town. During the course of the conversation, another passenger in the vehicle asked the appellant why he was leaving town and the appellant replied because of "the incident that happened Monday". The appellant admitted that "they really bungled it". The appellant also admitted that "it looked like his buddy had left him".
Robinson, a one time employee of the Exxon Service Station, also testified that Michael Blanche had told him several times that he might rob the station and that Blanche had made this statement to him about one week before the robbery.
On Saturday, October 19, 1974, Detective W.R. Stricklin and Officer Rubin Wilkinson of the police department of the City of Fairfield, Alabama, drove to Nyack, New York, with a warrant for the arrest of the appellant. Waiving extradition, the appellant was returned to Fairfield and placed in the city jail on Tuesday morning, October 29, 1974. Stricklin testified that the appellant was not questioned on the return trip. That afternoon, Detective Stricklin had the appellant brought to his office for questioning. The appellant informed Stricklin that he had been advised by his lawyers not to say anything. Stricklin then told the appellant that the best thing he could do was to follow his lawyers' advice. The appellant was returned to his cell without further questioning. Sometime during the day, Detective Stricklin was informed that one of the appellant's attorneys had called and stated that he represented the appellant and did not wish the appellant to talk with anyone.
Either on the afternoon of the 29th or the next morning, Stricklin notified the appellant's attorneys by telephone that a line-up would be held on October 30th at 1:00 P.M. Around 9:30 on the morning of the line-up, Stricklin called the defendant's attorneys and notified them that the line-up had been canceled. Stricklin testified that between the time the line-up was originally scheduled and the time it was canceled, Hermon Long, an employee of J.C. Penney Department Store, identified the appellant from a photographic display as one of the two men he had seen running across the parking lot of Penney's on the morning of the robbery. Detective Stricklin also went to the appellant's *Page 1374 
cell and advised him that the line-up had been canceled. No further conversation was had at that time other than to notify the appellant that he would be transferred to the county jail. Stricklin testified that he did not inform the appellant that a witness had identified him.
Sometime later that morning Officer Wilkinson photographed and fingerprinted the appellant. No conversation was had while Wilkinson "mugged and printed" the appellant. According to Wilkinson's testimony, after he finished the appellant stated that he wanted to speak to Detective Stricklin. Stricklin was summoned and as he approached, the appellant announced that he wasn't going to take the murder rap for Michael Blanche and that he wanted to tell "how it was". Stricklin advised the appellant that "(he) didn't have to tell (him) anything", but the appellant expressly stated that he wanted to.
Stricklin took the appellant to the office of Detective Sanders who advised the appellant of his Miranda rights from memory. Before reducing the appellant's statement to writing, Sanders also read him his rights off the printed cover sheet on which the confession was written. The appellant also read these rights and indicated to Sanders that he understood these rights. Sanders then wrote down what the appellant stated. The appellant read the statement admitting his part in the robbery and signed it. The statement concludes with the following two sentences:
 "I have talked to my lawyer and I am giving this statement fully and voluntairly (sic) and to ease my conscious (sic). I have read these three pages of my statement and they are true and correct to the best of my knowledge."
In the confession, the appellant admitted that he went with Michael Blanche to rob the Exxon Service Station. According to this statement, the appellant was merely present while Blanche pulled a .25 caliber automatic pistol on the station manager and took the money. As the appellant started to leave the scene, he heard a shot, turned around and saw Blanche "come running out of the office with a gun in his hand and a brown paper bag up under his jacket". After the robbery and murder, Blanche told the appellant to wait on a corner but the appellant never saw him again. Both Sanders and Stricklin testified that no force or coercion was employed against the appellant. When the confession was given they were the only ones in the room. No offer or promise of reward was made to the appellant. At the time the appellant gave the confession (approximately 1:20 P.M., October 30, 1974) he had been in jail approximately thirty-one hours. During the time since he had been placed in the Fairfield City Jail, the appellant had been visited by his brother and one of his attorneys. At the time when this statement was given, Detective Stricklin knew that one of the appellant's attorneys had stated that he wanted to be there if the appellant was interviewed or questioned. Officer Sanders did not know the appellant was represented by counsel until the appellant was almost finished with his confession.
The testimony of the appellant was in direct contradiction to that adduced by the state. The appellant testified that during the return trip from New York to Alabama, the police officers sought to question him concerning the case. He stated that he was questioned on nine or ten separate occasions in his jail cell upon the first day of his return from New York; that Wilkinson and Stricklin constantly questioned him; that he asked to call his attorney more than six or seven times and was denied permission; that he was fingerprinted five or six times; that he was not advised of his rights and that even if he was he didn't understand them; that Officer Stricklin questioned him five or six times Wednesday morning. The appellant testified that he just "confessed" what they told him to say and what he thought they wanted to hear and that he "would have told them anything to leave (him) alone".
Three witnesses testified that the appellant and Michael McConnico were painting a house during the time of the commission of the robbery. *Page 1375 
The appellant contends that the admission of the confession into evidence constitutes reversible error because (1) the confession is based on the continued interrogation of the defendant after he declined to waive his constitutional rights, (2) because his privately retained attorney had advised the defendant to remain silent and had requested to be present at any interrogation but was not notified or given an opportunity to be present during the interrogation, (3) because the police officers promised the defendant that if he would give them a statement against Michael Blanche, they would set him free in return for his turning state's evidence, (4) that the police officers misrepresented to the defendant that an employee of Penney's had identified him from a photograph, and (5) finally because the state did not meet its heavy Miranda burden to show that the defendant fully understood the nature of the constitutional protection he was waiving.
 I
Conflicting evidence was presented on three of the assigned grounds ((1), (3) and (4)) set out above. However, the testimony affords a broad basis for the ruling of the trial court that the confession was voluntary. We find no error in the ruling of the trial court on these grounds.
We have previously recognized the fact that:
 ". . . it is not unusual for the voluntariness inquiry to present conflicting evidence. Edgil v. State, 36 Ala. App. 379, 56 So.2d 677. When such a conflict occurs and the trial judge finds that the confession was voluntarily made, great weight must be given to his judgment. This finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence. Emerson v. State, supra [281 Ala. 29, 198 So.2d 613]; Harris v. State, 280 Ala. 468, 195 So.2d 521; Edgil v. State, supra. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Minirth v. State, 40 Ala. App. 527, 117 So.2d 355, cert. denied, 270 Ala. 228, 117 So.2d 360." McNair v. State, 50 Ala. App. 465, 470, 280 So.2d 171, 176 (1973).
 II
The appellant vigorously argues that once a criminal defendant has retained an attorney (or had an attorney appointed for him by the court) any statement obtained by interview from that defendant may not be offered in evidence for any purpose unless the accused's attorney was notified of the interview which produced the statement and was given a reasonable opportunity to be present. United States v. Thomas,474 F.2d 110 (10th Cir. 1973); Clifton v. United States,341 F.2d 649 (5th Cir. 1965); United States v. Smith, 379 F.2d 628
(7th Cir. 1967); Williams v. Brewer, 509 F.2d 227 (8th Cir. 1974); United States v. Slaughter, 366 F.2d 833 (4th Cir. 1966). This court has previously held that where the interrogating officer knows that the accused is represented by counsel but nevertheless interviews the accused at a time when counsel is not present, willingly and by subterfuge by-passing the presence of defendant's counsel, the accused is denied his constitutional rights of counsel. Such denial is not cured by a contention that the inculpatory statement was voluntary.Freeman v. State, Ala.Cr.App., 342 So.2d 435 (1977). This is to be distinguished from the situation where the accused has retained counsel but voluntarily waives the presence of that counsel during questioning. Tiner v. State, 279 Ala. 126,182 So.2d 859 (1966); Loyd v. State, 279 Ala. 447, 186 So.2d 731
(1966); Ables v. State, 53 Ala. App. 296, 299 So.2d 341, cert. denied, 292 Ala. 707, 299 So.2d 343 (1974).
The controlling proposition of law in this case, which in no way conflicts with that authority cited by the appellant, is that the accused may voluntarily, knowingly and intelligently waive his right to have counsel *Page 1376 
present at an interrogation after counsel has been retained or appointed, the burden being on the prosecution to show that the waiver was knowingly and intelligently made. Williams v.Brewer, 509 F.2d 227 (8th Cir. 1974); Miranda v. State ofArizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); see also Brewer v. Williams, ___ U.S. ___, 97 S.Ct. 1232,51 L.Ed.2d 424, decided March 23, 1977.
Contrary to the argument presented by the appellant, the fact that a defendant has an attorney does not mean, as a per se rule, that law enforcement officials cannot procure a statement of any kind from the defendant without prior notice to, if not the consent of, the attorney. Massiah v. United States,377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) does not compel the contrary conclusion to this rule. United States v.Springer, 460 F.2d 1344, 1350 (7th Cir. 1972). The right to counsel is a constitutional right and may be waived. Johnson v.Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938);Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758,12 L.Ed.2d 977 (1964). Neither does Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) require us to reach the conclusion maintained by the appellant. United States v. Smith,379 F.2d 628, 633 (7th Cir. 1967), cert. denied, 389 U.S. 993,88 S.Ct. 491, 19 L.Ed.2d 486; Springer, supra, at 1353. Thus the Supreme Court has affirmed convictions resulting from confessions obtained without the presence of counsel. UnitedStates v. Fellabaum, 408 F.2d 220 (7th Cir. 1969), cert. denied, 396 U.S. 858, 90 S.Ct. 125, 24 L.Ed.2d 109, and UnitedStates v. Crisp, 435 F.2d 354 (7th Cir. 1970), cert. denied,402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971), cited inSpringer, supra, at 1350.
There being no per se or technical violation by not having the retained or appointed counsel of an accused present during an interrogation prior to indictment, we must resolve the question of the possibility of any constitutional violation by looking to the facts of each particular case. Reviewing the pertinent facts in this instance we find that there was sufficient evidence for the trial court to conclude the following was true: That the appellant was advised of his Miranda rights at the time of his arrest; that the appellant was not questioned about the crime on the return trip from New York; that once at the Fairfield City Jail the appellant's attorney was allowed to visit him; that after the appellant informed Detective Stricklin that he had been advised by his attorney to remain silent, all questioning ceased; that the appellant voluntarily, intelligently and knowingly initiated and requested the interrogation which led to his signed confession; that this session only lasted about fifteen or twenty minutes; that the appellant was, at this time and before he confessed, given his Miranda rights two different times; that each time the appellant was informed of his right to have an attorney present during the time he was being questioned; that the appellant read these rights and stated that he understood them; and that the appellant freely and voluntarily and knowingly stated to the two officers who interrogated him his participation and knowledge of the crime under investigation.
There can be no doubt that the appellant was aware of the facts that he could have an attorney present during questioning and that he was making this statement in the absence and against the advice of his counsel. The confession itself consists of three pages. At the beginning of the first page is a printed introductory paragraph which advised the appellant, among other things, that he has the right to have his attorney present during the time that he is being questioned. Officer Sanders testified that he orally told the appellant of this particular right, and the appellant read it himself. At the close of the confession which was handwritten by Officer Sanders but dictated and signed by the appellant, appears the following:
 "I have talked to my lawyer and I am giving this statement freely and voluntairly (sic) and to ease my conscious (sic)."
Taking into consideration the totality of the circumstances surrounding the giving of the *Page 1377 
confession, we are of the opinion that these circumstances as a whole affirmatively disclose the voluntariness and volunteeredness of the confession. McBride v. State,51 Ala. App. 642, 288 So.2d 180 (1974); Dotson v. State, 288 Ala. 727, 265 So.2d 162, on remand, 48 Ala. App. 381, 265 So.2d 164, cert. denied, 288 Ala. 742, 265 So.2d 175, cert. denied,409 U.S. 1117, 93 S.Ct. 930, 34 L.Ed.2d 701 (1971). Such a review also convinces us the appellant knowingly and intelligently waived his rights to counsel and his right to have counsel present during any questioning or interrogation.
As we indicated in the beginning of this opinion, the evidence in this case on the circumstances surrounding the giving of the confession was conflicting and contradictory. Yet on reviewing that evidence, we cannot say that the decision of the trial court on the voluntariness of the confession is contrary to the great weight of the evidence, manifestly or palpably wrong. Blackburn v. State of Alabama, 361 U.S. 199,80 S.Ct. 274, 4 L.Ed.2d 242 (1960); Edwards v. State, 56 Ala. App. 405, 321 So.2d 744 (1975); 7 Alabama Digest, Criminal Law, 1158 (4).
Having reviewed the complete record as required by law it is the opinion of this court that the judgment of the trial court is due to be and is hereby
AFFIRMED.
All Judges concur.