LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a conviction, based on the verdict of a jury, for the possession of marijuana and a sentence to imprisonment for three years.
No question is raised by appellant as to the sufficiency of the evidence to support the verdict and judgment. He limits his “Statement of the Issues” to his contention that the trial court committed “reversible error by its failure to grant defense counsel’s Motion to Suppress the Evidence.” The evidence to which reference is made was nearly a pound of marijuana that was found in the trunk of an automobile, which, according to the undisputed evidence, was in the automobile while defendant was driving it. It was found in the trunk of the automobile while being searched pursuant to a search warrant after the automobile had been brought to the Calhoun County Jail. It had a short time before been stopped by officers at a road block, just after defendant brought it to a stop from a highly excessive and unlawful rate of speed on a public highway. Thereupon, in conversing with the driver and the other men in the automobile, officers observed a marijuana cigarette on the floorboard in front of the back seat of the automobile, and the *1112 four men were caused to lie face down on the ground for checking. Thereafter, the automobile and its four occupants were taken to the Calhoun County Jail, and a warrant was obtained to search the automobile.
Appellant divides his contention into two separate parts: (1) that defendant’s arrest was unlawful and (2) that the bag of marijuana was procured by an unreasonable search and seizure in violation of the Fourth Amendment to the Constitution of the United States, in that the search warrant was issued without being supported by an affidavit showing probable cause for believing that the automobile contained the controlled substance found in the trunk.
There were several stages of the Motion to Suppress, including the presentation and hearing of it before the trial commenced and during the progress of the trial. Some of the evidence as to the Motion to Suppress was presented in the presence of the jury and some out of its presence.
We examine first appellant’s claim that his arrest was unlawful. As to this, appellant takes into consideration all of the evidence, which we now summarize.
Officer Max Gessler of the Ohatchee Police Department testified that while he was on patrol on December 16,1979, at approximately 1:30 P.M., he spotted a white Mercury automobile with a Michigan tag, driven by the appellant, traveling in an opposite direction from the witness. He recognized the automobile as one that Chief Pearson had directed him to be on the lookout for as it was supposed to be transporting illegal drugs. He said Chief Pearson had told him that it was “a white vehicle with Michigan tag and it would have black males in it.” The automobile was traveling “around 35 or 40 miles an hour” at the time, which was well within the legal limit. According to Officer Gessler’s testimony, he then turned his automobile around and the following occurred:
“The vehicle took off at a high rate of speed and I pursued him for a quarter to a half of a mile and then the vehicle passed another vehicle and — at that time I was going about 110 or 115 miles per hour to try to catch the vehicle and then I hit my blue light and siren for him to stop and he — at which time he would not stop and I proceeded to follow him out to 431 where I had called the Calhoun County Sheriff’s Department to intercept him and at that time that is when I did get the car stopped.”
The car was stopped about seven or ten miles from the place where it was first followed by Officer Gessler to a road block supplied by deputy sheriffs.
Deputy Sheriff Alan Reese, one of the officers participating in the road block, testified that after hearing Officer Gessler’s radio transmission, the road block was set up and the automobile was stopped. In the automobile was the defendant, the ¿river, whose identity was later learned. With him on the front seat was his brother, Michael Brewster. In the back seat were two men by the names of Teague and Mozell Jonakan. The four men were taken to the Calhoun County Jail, and the automobile in which they were riding was towed to the same place.
In arguing that the arrest of defendant was illegal, appellant emphasizes the testimony of Officer Reese to the effect that all of the occupants of the automobile were placed under arrest at the place of the road block , and charged with the possession of marijuana.
Whatever the rights of the three passengers in the automobile and however such rights may have been violated, which we do not pass upon at this time, we are unable to agree with appellant’s contention that defendant was unlawfully arrested, searched and taken to jail. A crime, though a misdemeanor, had been committed by defendant in the presence of the arresting officers. It was not as appellant says, a “routine traffic” offense. We cannot agree with the implication that the arrest was “by reason of the suspects ambiguous conduct which the arresting officers themselves have provoked.” The fact that an officer in an officially marked automobile is trailing a motorist would logically provoke him to *1113 slow down, not to drive at a dangerous and even death-defying rate of speed. Appellant also emphasizes that “Officer Gessler had already made up his mind to stop the vehicle based on what Chief Pearson had told him, not on any violation of any traffic offense.” Irrespective of what Officer Ges-sler had in mind at the time he turned around and followed the defendant, it was his right and his duty to stop and arrest him when it became obvious that he was a menace to the safety of others upon the road.
Officer Reese’s characterization of the arrest at the scene of the road block as an arrest for possession of marijuana appears to us as an over-simplification, but even if the arrest of defendant at the time was for the possession of marijuana, the obvious belief of the officers who arrested him that marijuana was in the automobile was greatly strengthened by the flight of the defendant. Tiner v. State, 279 Ala. 126, 134, 182 So.2d 859 (1966).
The contention of appellant that the officers had no probable cause for arresting defendant, even for the possession of marijuana, is somewhat incongruous with the defendant’s own testimony on the trial in which, although he denied knowledge of the presence of the marijuana in the trunk, he said as to his flight that the occupants of the back seat told him, “Run, because we are smoking this here and if they stop us, because if they stop us we are all going to go to jail anyway.” He was asked why he fled and replied, “Because they were smoking dope in the back.”
As to the question of the validity of the search warrant, the affidavit made by Chief Pearson before a judge of Calhoun County Circuit Court could issue it contains the following statement of facts:
“My name is J. L. Pearson. I am the Police Chief for the City of Ohatchee, Alabama. Over the past year to 18 months I have received information on several occasions regarding a white Mercury automobile with a Michigan tag and driven by a black male. My informant identifies herself as one Michele Brewster. This informant told me that the above automobile comes to the Ohatchee area during various holiday seasons and brings marihuana and cocaine from Michigan. About 5 months ago this woman called me, told me the car was back in town and had drugs in it. Deputy Hur-ston Hodges and I spotted this car and turned around and gave chase. The car eluded us. This morning I got a message through the Calhoun Co. jail and from Deputy Watson that a Michele Brewster called and told him that the above car was in the Ohatchee area and had marihuana and hasish (sic) in it. At about 1:30 P.M. this date, Officer Gessler of my department spotted the car. I had told him to watch out for it and why. He turned around on the car and it attempted to out run him. The car was finally stopped on Highway 431 by aid of a Calhoun Co. Sheriff’s car. Marihuana was found on the occupants of the car. The car is now in custody and the occupants are under arrest. I believe the trunk of this automobile to contain marihuana.”
Appellant’s argument as to the asserted insufficiency of the affidavit to support the search warrant is addressed exclusively to the absence from the affidavit of any showing to the effect that the “informant” who identified herself to Chief Pearson as “Michele Brewster” was a reliable informant. Chief Pearson was interrogated intensively and extensively as to this while testifying on the pretrial hearing of the Motion to Suppress and out of the presence of the jury after the trial had commenced. A pertinent part of his testimony relied upon specifically by appellant was as follows:
“Q. Have you ever met that informant, to your knowledge?
“A. Not to my knowledge.
“Q. Do you know who that informant was?
“A. She identified — excuse me, my speech. She identified herself as Michelle Brewster.
“Q. But, you don’t know that it was Michelle Brewster?
“A. No, sir.
*1114 “Q. Has Michelle Brewster ever provided you any information that has led to an arrest?
“A. No, sir.
“Q. Based on this, Chief, would you say that she is reliable?
“A. Based on what?
“Q. Based on the fact that she has never provided you any previous information, that you have never met the woman and the fact that you don’t know that you were talking to Michelle Brewster; would you say that that is a reliable informant?
“A. No, sir.”
The enigma of the identity of the person who called Chief Pearson at intervals over an extended time is not solved by the record in this case. However, the only witness, other than defendant, who testified in his behalf on the trial, was Denise Michelle Marshall, defendant’s sister, who testified that she was not the person that called Chief Pearson, that she had never called him, that she lived in Ohatchee at the time of the trial but was staying in Tuscaloosa at the time of defendant’s arrest. She said further that she did not know where defendant lived but she thought he was living in Michigan, but that she saw him at their mother’s home in Ohatchee “a day or so” before he was arrested.
That uncorroborated information that a felony has been committed, or is being committed, that comes solely from a person whose credibility has not been shown, is not trustworthy enough to furnish probable cause for belief that the information furnished is true, when the person furnishing the information comes within a particular type of informer or informant, is thoroughly established. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Payton v. State, 47 Ala.App. 347, 254 So.2d 351 (1971); Hadley v. State, Ala.Cr.App., 391 So.2d 158, 161 (1980).
Chief Pearson’s testimony that he would not say that the person who called him under the name of Michelle Brewster “is a reliable informant” is to be considered in the context of the question to which his statement as an answer was given. Furthermore, it is to be considered and interpreted in the light of the specific meaning of the word “informant” as there used and in cases in which it has been held that the credibility of the person who gives the information must be established in order for the information to serve as a basis for an arrest or the issuance of a warrant. The chief made it clear that he did not place the informant in the category of a reliable informant who had been previously tested and found to be credible in repetitive cases of past or existing criminal conduct. He could have come to no other conclusion, as he did not know the informant and perhaps at first put little credence in what she told him, but by reason of her importunity over a period of many months in which there was no variation, he could only be able to conclude that she was either fatuous or factual. The result established the second alternative, although it does not establish either alternative of whether or not she was Michael Brewster. Whatever her purpose, whatever her motive, whatever her relation to the defendant, good or bad, an experienced officer, such as the chief, could have reached no reasonable conclusion other than that the information was trustworthy to the extent at least of proceeding on it stage by stage, as was done, with an accumulation of corroboration at each stage.
Although the unique status of the informant in this case defies definite categorization, it is certain that she was not in the category of the usual police informer. Although she could have been acting in a spirit of revenge, hate or jealousy toward the person whom she thought would have been operating the particular automobile, she could hardly have had any intent to mislead the authorities. There could have hardly been any motive to do so. She may not have been influenced any by a spirit of good citizenship, but she did not partake of the nature of persons who have been authoritatively held to be informers as to whom the requirements of Aguilar, supra, *1115 and Spinelli, supra, must be met, for the reason that there was no expectation of gain or concession in exchange for the information. Loveday v. State, 74 Wis.2d 503, 247 N.W.2d 116 (1976); State v. Paszek, 50 Wis.2d 619, 184 N.W.2d 836 (1971); Hadley v. State, supra.
Search of the trunk of the automobile and the seizure of the marijuana therein did not constitute an unreasonable search and seizure as prohibited by the Fourth Amendment.
The court was not in error in denying defendant’s Motion to Suppress.
It should be said, we think, to the credit of defendant, that he took the stand and met the accusation head-on. His explanation was that the automobile belonged to his brother in Grand Rapids, Michigan, that defendant drove the automobile from Grand Rapids and arrived at his mother’s house in Ohatchee the day before he was arrested; that the next morning he and another brother (Alfred) took a ride in the car; that they picked up Mozell Jonakan and Alton Teague, who started smoking marijuana. He saw two joints, which they were still smoking when the police car was noted and defendant commenced picking up speed after being told to do so by the men in the rear seat. They had offered Alfred a third joint but he hadn’t taken it. Defendant said also:
“When Alfred got down to the jail they found one on him then. They found one in his boot and one in his pocket and they found some on Alton.”
He further said that he knew that “Alfred had marijuana on him” when they started off in the automobile from his mother’s house. According to the testimony of defendant, his traveling bag had been in the back seat of the automobile in traveling from Michigan to his mother’s house and he had not opened the trunk of the automobile. His testimony left room for some inference that the night before the arrest or sooner someone had taken his keys, or another key, and placed marijuana in the trunk without the knowledge of defendant. His testimony was to the effect he had smoked marijuana but he had never been charged with it or convicted of crime other than minor traffic violations. It appears that the court took into consideration the favorable features of his testimony, as well as all other pertinent matters, in fixing defendant’s punishment at imprisonment for three years, suspending execution and placing him on probation.
We find no error in the record prejudicial to defendant, and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.